#### IN THE

# SUPREME COURT

#### OF THE

## STATE OF CALIFORNIA,

##### IN JUNE TERM, 1850.

---

### THE PEOPLE, *ex rel.* THE ATTORNEY GENERAL, *ex parte.*

This court is strictly an appellate tribunal, and has no original jurisdiction except in cases of *habeas corpus*; and consequently is not empowered to issue a writ of *quo warranto*, for the purpose of inquiring by what authority a person exercises the duties of a collector of the foreign license tax.

The court being created by the constitution, and its powers being therein defined, the jurisdiction conferred by the constitution must be taken as exclusive of all other jurisdiction.

The constitution has not clothed this court with the powers and jurisdiction of the court of king's bench in England.

On petition of attorney general for a writ of *quo warranto* against a tax collector; *held*, that the court had no jurisdiction, and the prayer of the petition was denied.

By an act of the legislature passed at its first session, entitled " an act for the better regulation of the mines, and the govern- " ment of foreign miners," foreigners were not permitted to mine in this state without obtaining a monthly license for that pur- pose, for which every foreigner was required to pay the sum of twenty dollars per month. In order to test the constitutionality of this act of the legislature, the attorney general presented a petition to this court, in which he set forth that L. A. Besan- çon had been appointed and commissioned " collector of licenses " to foreign miners " for the county of Tuolumne, and that

[85]

by virtue of such appointment, he had collected a considerable amount of money from foreigners engaged in mining, who were residents of the county of Tuolumne, and that he was still proceeding in the exercise of his office. The petitioner claimed that the act of the legislature was contrary to, and in violation of, the constitution of the United States and the constitution of this state, and the treaties of the United States with foreign nations, and particularly in violation of the treaties made by the United States, respectively, with Great Britain, France, Mexico, and Chile; and that the collection of the license tax by Besançon was an unwarrantable usurpation of office, and was working great injury to the interests of society and the welfare of the state. The petitioner, thereupon, prayed that leave might be granted him to file an information in this court in the nature of a *quo warranto* against the said Besançon, and that he should be required to appear and show by what authority he exercised the office of " collector of licenses to " foreign miners."

*S. Heydenfeldt,* on behalf of the attorney general.

*By the Court,* HASTINGS, Ch. J. The counsel who appears for the attorney general in support of this petition, has, with much ability, urged upon the consideration of this court the two following points:—

1. The jurisdiction of this court to issue writs of *quo warranto.*

2. The merits of the present petition. The merits of the application ought not to be further inquired into, (if the court possess the jurisdiction,) than to ascertain whether there be reasonable ground for making the investigation proposed, inasmuch as such a question should remain open and undecided until all parties in interest shall be fully heard. Therefore this position of the counsel will not be further examined on the present petition. As to the jurisdiction of this court to issue such writs, it becomes important to consider the consequences which are to follow directly affecting the rules of practice in this court,

The Attorney General, *ex parte.*

should we entertain such a jurisdiction. It will be conceded that the office of this writ is to prevent the usurpation of any office, franchise or liberty, as also to afford a remedy against corporations for a violation of their charters tending to a forfeiture thereof. (*Graham on Jurisdiction of Supreme Court,* 198.) It must follow, from the exercise of the remedies which this writ affords, that juries are to be empannelled to try the various issues of facts which, from the nature of the investigation, would be of a wide range and of the most exciting character. Another consequence is the introduction into this court of rules of pleading of courts of original jurisdiction as to the making up of issues, subpœnaing witnesses, taking of depositions, granting continuances, rendering final judgments, and issuing final process.

Such being some of the consequences resulting from this jurisdiction, the question is at once suggested, whether the framers of the constitution of this state and the legislature intended to confer it upon this court, and whether by necessary implication we are not bound to infer an absolute inhibition against the exercise of such power. The legislature have not provided this court with a jury in any case, nor authorized it to cause an issue of facts to be made up in this court and referred to another court for trial. It is intended by the policy of our judicial system that all issues of facts are to be tried before the district and other inferior courts of this state.

The legislature have, however, in the act organizing this court armed it with all writs and process which may be necessary and incidental to an appellate jurisdiction, as by the seventh section of said act, it is provided that "the said court and each "of the justices thereof shall have power to issue writs of "*habeas corpus, mandamus, injunction, certiorari, supersedeas,* "and such other writs and process known to the law as may be "necessary to the exercise of their jurisdiction."

It is contended by counsel that as the kind of jurisdiction is not defined in the above clause it may mean other than appellate jurisdiction.

The fourth section of the sixth article of the constitution

provides as follows :—" The supreme court shall have appellate " jurisdiction in all cases where the matter in dispute exceeds " two hundred dollars, when the legality of any tax, toll or im- " post or municipal fine is in question ; and in all criminal " cases amounting to felony or questions of law alone, and to " issue writs of *habeas corpus.* They shall also have power to " issue all other writs and process necessary to the exercise of " their appellate jurisdiction."

The counsel holds that this section does not exclude from this court the exercise of other than appellate jurisdiction, and in support of this construction, refers to similar clauses in the constitutions of several of the states to which is appended the word " *only*" or other words of negative import. It is difficult to perceive how the presence of this word could in any manner substantially affect the jurisdiction of this court.

It is said by the counsel that this court was created the highest judicial tribunal of the state by the people, and that it holds the same relation to the people of the state as the court of king's bench to the king of England at the time of the organization of that court.

Whatever may be the practice of the king's bench as to writs of this nature, it is clear that the power which created this court has declared what its jurisdiction is. That power did not confer upon this court all the prerogatives and undefined power of the court of king's bench when the common law should be adopted, and which would have been inferred if its jurisdiction had not been defined. If the declaration of this jurisdiction be not exclusive of all other, why, it may be asked, define it ? Without the use of the words, the court would possess "appellate jurisdiction." And if, as is contended, the court can exercise all other jurisdiction than that of the kind specified, then it may entertain appeals in any case where the matter in dispute is less than the sum of $200, and thus it must follow, (to give the language in the constitution meaning,) that we are forced to the inference that all other jurisdiction than that of an appellate court, and all matters incidental thereto, are excluded. The only original jurisdiction conferred either by the act of the legisla-

ture or the constitution, is in the isolated case of issuing writs of *habeas corpus.* If it had been intended either by the framers of the constitution or the legislature to bring under the cognizance of this court any other matters of original jurisdiction, it is but reasonable to suppose that this process alone would not have been designated.

This court, then, being clothed with all the powers necessary for the exercise of a general appellate jurisdiction, it will exercise a supervisory control over all the inferior courts of this state, and when the district court shall refuse to afford the relief which it alone has the power to grant, may issue the writ of *mandamus* commanding the necessary process to be issued, and, if such court shall usurp a jurisdiction, may by its writ of injunction or prohibition prevent such abuse of power, and when such courts commit errors in the exercise of their powers, correct such errors on appeal.

If the district judge of the proper district refuse to issue the writ prayed for in the pending petition, it being a writ of right, we do not at present doubt our power to compel the judge or court to issue such writ on proper showing to this court.

In viewing thus the powers of this tribunal, we give due weight to the argument of counsel that this court does possess all judicial power of a court of final appeal, except in the cases which may hereafter be liable to be removed to the federal supreme court, and clothe ourselves with all judicial power of which we are not divested by the constitution and laws of this state.

To the subjects of foreign powers on terms of amity and favor by treaty with our government, in whose behalf an appeal was made on the argument, who may feel that their rights, as such, are violated by the act of the legislature in question, we do not declare that our courts of justice can afford no relief.

The initiation to the investigation of their grievances can be taken in the proper court, and if aggrieved by its decision, an appeal can be prosecuted to this court.

It is suggested by counsel that the investigation proposed

would not involve an issue of fact, that therefore the prayer of the petition should be granted.

It cannot well be conceived how a distinction could be made between writs which would lead to an issue of law or of fact. The present petition, probably, presents as purely an issue of law to be tried on the return of the writ as any case could, and yet if the defendant should appear and traverse that part of the petition which charges the defendant with collecting a considerable amount of money from foreigners, and the fact charged that such foreigners are residents of the proper county in this state, he would by the bill of rights be entitled to a trial by jury.

The writ, therefore, for the foregoing reasons, is refused.